IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Criminal No. 11-206 |
| | ) | Criminal No. 12-126 |
| GREGORY IZEAR CORBIN, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

AND NOW, this 29th day of April, 2022, upon consideration of Defendant Gregory Izear

Corbin's *pro se* Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A) (Doc. No. 65 at

Crim. No. 12-126), filed on July 1, 2021, and his Amended Motion for Compassionate Release

(Doc. No. 167 at Crim. No. 11-206; Doc. No. 69 at Crim. No. 12-126), filed by counsel on

August 28, 2021, and in further consideration of the Government's response thereto (Doc. No.

172 at Crim. No. 11-206; Doc. No. 73 at Crim. No. 12-126), filed on October 15, 2021,

Defendant's reply and supplement (Doc. Nos. 177 & 178 at Crim. No. 11-206; Doc. Nos. 79 &

80 at Crim. No. 12-126), filed on November 22 & 23, 2021, the Government's sur-reply (Doc.

No. 81 at Crim. No. 12-126), filed on November 24, 2021, and Defendant's sur-sur-reply (Doc.

No. 181 at Crim. No. 11-206; Doc. No. 84 at Crim. No. 12-126), filed on December 20, 2021,

IT IS HEREBY ORDERED that, for the reasons set forth herein, the Defendant's Motion

and Amended Motion are DENIED.[1]

---

[1]     The Court notes that several documents, including the initial *pro se* motion, were filed only at Criminal No. 12-126.  The Court has, however, considered all documents filed in both cases as to its determination in each case.

1

On May 29, 2012, Defendant pled guilty to one count of possessing a firearm as a convicted felon, in violation of 21 U.S.C. § 922(g)(1), at Criminal No. 11-206.  Approximately three months later, on August 22, 2012, Defendant also pled guilty to a violation of Section 922(g)(1) for possessing a firearm as a convicted felon at Criminal No. 12-126.  The convictions were grouped for sentencing, and the advisory United States Sentencing Guidelines recommended that the Court impose a term of imprisonment ranging from 130-162 months for the two counts.  However, on January 8, 2013, pursuant to the agreement of the parties, the Court imposed a 120-month term of imprisonment at each of Criminal Nos. 11-206 and 12-126, to be served concurrently with one another.  Subsequently, on April 9, 2013, Defendant pled guilty to Pennsylvania state charges for robbery and aggravated assault at Case No. CP-02-CR-9804-2011.  He was sentenced by the Commonwealth to 7 and a half to 15 years' imprisonment, to be served consecutive to his federal sentence.  Defendant immediately began serving his state sentence, from which he was paroled on October 15, 2020.  On that same date, he began serving his federal sentence, and his projected release date is February 4, 2029.  *Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited April 29, 2022).

Defendant now seeks "compassionate release," pursuant to 18 U.S.C. § 3582(c)(1)(A), on three grounds.  First, he seeks release on the basis of his heightened vulnerability to the COVID-19 virus because of his medical conditions, including hypertension and obesity.  Second, he seeks release on the ground that his minor child is in immediate need of care given that he was removed from his mother's custody.  Finally, he argues that his rehabilitative measures, and the fact that he has just finished serving a lengthy state sentence, warrant an immediate release.  For the reasons stated below, the Court disagrees and will deny Defendant's Motion and Amended Motion.

A district court's authority to modify a sentence in a criminal case that has become final is very limited. *See Dillon v. United States*, 560 U.S. 817, 819 (2010); *United States v. Ponton*, 407 Fed. Appx. 622, 624 (3d Cir. 2011). District courts do have authority, however, to reduce a final sentence under 18 U.S.C. § 3582(c). Section 3582(c)(1)(A), as amended by the First Step Act, Pub. L. 115-391, 132 Stat. 5194, permits an incarcerated person to petition the court for compassionate release. The statute provides in pertinent part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –
>
> **(i)** extraordinary and compelling reasons warrant such a reduction…and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i). Defendant submitted such a request to the warden at FCI-Hazelton on April 5, 2021, which was denied on May 6, 2021. (Doc. No. 65 at Crim. No. 12-126). Because the warden received Defendant's request more than 30 days ago, the Court can consider the pending motion for compassionate release. *See United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020). The Government does not dispute that Defendant has met the procedural requirements of Section 3582(c)(1)(A).

Having determined that Defendant met the procedural requirements, the Court must next decide whether he has established an extraordinary and compelling reason or reasons warranting

a reduction in his sentence and whether a reduction is consistent with applicable Sentencing Commission policy statements.  Defendant "bears the burden of proof by a preponderance of the evidence" to establish that he is entitled to relief.  *United States v. Grasha*, 489 F. Supp. 3d 403, 406 (W.D. Pa. 2020).  The extraordinary and compelling reasons requirement demands, at "minimum," that the "justification for release" is "both unusual (*i.e.*, unique to the inmate, and beyond the ordinary hardship of prison) and significant (*i.e.*, serious enough to make release appropriate)."  *United States v. Arthurs*, Crim. Nos. 18-188 & 20-73, 2022 WL 796752, at *4 (W.D. Pa. Mar. 16, 2022) (citation omitted).  The Sentencing Commission had defined "extraordinary and compelling" pursuant to the Application Notes to USSG § 1B1.13, but the Commission has not updated this policy statement since the enactment of the First Step Act. Accordingly, this statement is not binding, and there is no "applicable" policy statement for inmate-initiated motions for compassionate release.  *See United States v. Andrews*, 12 F.4th 255, 259 (3d Cir. 2021).  However, the Commission's previous policy statement "sheds light on the meaning of extraordinary and compelling reasons" and should be considered by the Court in construing those terms.  *Id.* at 260.

As noted, Defendant's primary basis for seeking compassionate release is that his physical conditions, including hypertension and obesity, make him uniquely vulnerable to the COVID-19 virus while incarcerated at FCI-Hazelton.  At the outset, the Court notes that the Third Circuit Court of Appeals has held that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."  *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).  *See also United States v. Roeder*, 807 Fed. Appx. 157, 161 n.16 (3d Cir. 2020);

*United States v. Stallings*, No. 1:12-CR-37, 2020 WL 3619071, at *3 (M.D. Pa. July 2, 2020) (holding that "something more than a generalized concern regarding COVID-19 is required" to justify compassionate release); *United States v. Somerville*, 463 F. Supp. 3d 585, 596 (W.D. Pa. 2020) (explaining courts have found that "generalized or speculative fear about the risk of infection" does not warrant compassionate release); *United States v. Andrews*, 480 F. Supp. 3d 669, 686 (E.D. Pa. 2020).

However, while the mere existence of the COVID-19 virus may not warrant compassionate release, courts have, in determining whether to grant relief under Section 3582(c)(1)(A), considered whether the defendant's medical conditions, as exacerbated by the COVID-19 pandemic, rise to an "extraordinary and compelling" level, such that release could be warranted. *See United States v. Iezzi*, No. 2:17-CR-00157, 2020 WL 4726582, at *8 (W.D. Pa. Aug. 14, 2020); *United States v. Brinson*, CR 15-87, 2020 WL 4736258, at **3-4 (W.D. Pa. Aug. 14, 2020). Successful movants for compassionate release whose requests are based, in part, on the ongoing pandemic have demonstrated a unique medical or age-related vulnerability to severe illness from COVID-19, and "an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held." *Somerville*, 463 F. Supp. 3d at 597.

As noted, Defendant has raised his hypertension and obesity as possible increased risk factors. According to the Centers for Disease Control and Prevention, people diagnosed with hypertension and/or obesity are indeed at increased risk of severe illness from COVID-19 because of their medical condition. *See People with Certain Medical Conditions*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated April 29, 2022). Moreover, "[a] person's risk of severe illness from COVID-19 increases as the number of underlying medical

conditions they have increases." *Id.* However, although Defendant has demonstrated the existence of these conditions, the record demonstrates few actual complications arising from them that would increase his risk of serious illness. Defendant's blood pressure appears to have fluctuated between normal to moderate hypertension and has required merely conservative treatment. *See High Blood Pressure (Hypertension)*, Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/4314-hypertension-high-blood-pressure (last visited April 29, 2022). Further, he has not alleged any related symptoms. Likewise, although the records do credibly show that Defendant has a Body Mass Index indicative of obesity, he cites to no specific weight-related symptoms.[2]

At the time he filed his initial motion, Defendant had declined to be vaccinated against COVID-19. However, since filing, he has now received two doses of the Moderna vaccine and is considered to be fully vaccinated. Given the relatively unremarkable nature of his hypertension and obesity (and sleep apnea), and the fact that he is now fully vaccinated, the Court finds that Defendant has not presented any kind of unique or extraordinary vulnerability to the virus. *See United States v. Singh*, 525 F. Supp. 3d 543, 547 (M.D. Pa. 2021) ( "[T]he Court concludes that Singh's recent vaccination mitigates his risk from COVID-19 to such an extent that COVID-19, in combination with Singh's underlying conditions, no longer presents an extraordinary and compelling reason to grant compassionate release."); *United States v. Cole*, No. CR 04-109, 2022 WL 1082480, at *5 (W.D. Pa. Apr. 9, 2022) ("[G]iven that Defendant is

---

[2]     Subsequent to the filing of his initial *pro se* motion, Defendant appears to also have been diagnosed with sleep apnea. However, not only is sleep apnea not generally considered to be a COVID-related risk factor, Defendant, as with his hypertension and obesity, has demonstrated no related symptoms arising from this condition.

fully vaccinated, Defendant has not sufficiently established that [his condition] puts him at risk of severe illness or death if he contracts COVID-19 while incarcerated.").

The Court further notes that COVID-19 is not currently an extraordinary or compelling concern at FCI-Hazelton, as only one active case is currently being reported at the facility.  *See* www.bop.gov/coronavirus (last visited April 29, 2022).  Given the totality of the evidence in the record, the Court does not find Defendant to have any unique susceptibility to the COVID-19 virus.  Accordingly, it finds that his physical conditions do not constitute extraordinary or compelling factors supporting compassionate release.

Defendant's second ground for relief pursuant to Section 3582(c)(1)(A)(i) fares no better.  As noted above, Defendant argues that compassionate release is warranted because his minor child is in immediate need of care because he was removed from his mother's custody.  The Sentencing Commission's now-advisory policy statement specifically addresses such situations; Comment 1(C)(i) of Section 1B1.13 of the Sentencing Guidelines provides that "the death or incapacitation of the caregiver of the defendant's minor child or minor children" can provide the extraordinary and compelling reasons justifying compassionate release.  However, while Defendant provides evidence that his child was removed from his mother's custody and is in foster care,[3] he does not satisfy his burden to demonstrate that this situation calls for his immediate release.

While, as noted, the Commission's policy statement does state that the need to provide care to minor children can provide the extraordinary and compelling reasons justifying compassionate release, courts have found that a defendant must demonstrate suitability to

---

[3]      The Court notes that the child's mother faces state criminal charges in connection with the care of her children at Case No. CP-02-CR-1488-2021.

become a caregiver in order to show that release is warranted on this basis.  For example, in *United States v. Paul*, the court held that the demonstration of a defendant's suitability as a caregiver is "implicitly required" by the "extraordinary and compelling standard."  No. 3:18-CR-227, 2020 WL 5807343, at *1 (S.D.W.V. Sept. 25, 2020).  There, the court denied the defendant's motion for compassionate release because there was no evidence in the record that the defendant had "retain[ed] parental or custodial rights over the children."  *Id.* at *2.  In *United States v. Johnson*, the court found *Paul* instructive and, though county social services had removed the defendant's son from his mother's care, denied the defendant's motion because he provided mostly "conclusory assertions" concerning his legal right and capacity to care for the child.  No. 1:15-CR-59, 2020 WL 6075867, at *5 (E.D. Cal. Oct. 15, 2020).

Here, as in *Paul* and *Johnson*, Defendant has failed to support his motion with evidence that he is a suitable caregiver for his minor child.  It is unclear what, if any, custodial or parental rights Defendant has retained over the minor at issue.  The records provide only that there is no acknowledgement of paternity.  (Doc. No. 65 at CR 12-126).  Moreover, other than asserting, without support, that he is the child's only available caretaker (*id.*), he does not provide any basis for establishing his suitability as a caretaker for the child.  Defendant has not, for instance, provided any evidence concerning whether and how he has maintained a relationship with the child during his incarceration.  Indeed, no provisions related to caring for a minor child are included in his Proposed Release Plan.  Further, there is no evidence in the record as to whether local child welfare services would approve Defendant's assumption of the child's care given his criminal history.  Given that Defendant's contentions are, at best, "conclusory assertions," as to

his suitability to assume his child's care, the Court will not find extraordinary and compelling

reasons justify reducing Defendant's sentence on this ground.[4]

Finally, Defendant argues that the rehabilitative measures he has taken while incarcerated

and the amount of time spent in state custody justify compassionate release.  The Court first

---

[4]      When the BOP considers compassionate release requests on these grounds, it goes to great lengths to evaluate a defendant's ability to provide care.  The "best interest of the child" is a principal consideration.  Fed. Bur. of Prisons Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g), at 7 (Jan. 17, 2019), *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf.  Review proceeds in two stages.  *Id.* First, inmates are asked to provide a statement explaining the primary caregiver's relationship to the inmate's children and the circumstances surrounding that caregiver's death or incapacitation. *Id.*  They are also asked to provide: "[a] statement that this person was the only family member capable of caring for the inmate's child," the primary caregiver's name and relationship to the inmate, a death certificate or documentation of incapacitation, proof of the inmate's parentage, documentation of the child(ren)'s name(s) and age(s), a release proposal that includes housing and financial plans, and authorization for the BOP to contact persons with insight into the circumstances ("any individual, medical entity or doctor, or any government agency about the inmate, family members, and minor child").  *Id.* at 7-8.

At stage two, the Warden "convene[s] a committee consisting of the inmate's unit manager, correctional counselor, and any other relevant staff (social worker, physician, psychologist, etc.) to investigate the facts and circumstances provided by the inmate and to review supporting letters and documents" so as to inform the Warden's consideration of the request.  *Id.* at 8.  The committee collects information concerning "the child's physical and mental condition"; information concerning the child's care from pre-arrest to present incarceration; and proof that the former caregiver "was and still is the only family member caregiver capable of caring for the inmate's minor child."  *Id.*  An inmate's conduct—especially incidents of violence, child abuse or neglect, keeping dangerous items like drugs or firearms in a residence where a child also lived—is subject to serious consideration.  *Id.* at 8-9.  Indicia of the inmate's preparedness for parenthood are also important.  For example, the Warden considers whether an inmate has taken parenting classes or maintained a parent-child relationship.  *Id.* at 9. An inmate's family members and other interested persons may also provide their input.  *Id.*

The BOP's review process illustrates the gravity of evaluating the appropriateness of a defendant's release to care for a minor child or children.  The inadequacy of the record in this matter is underscored by its comparison to the collection of records and input the BOP amasses when it considers this type of compassionate release request.  The Court cannot overemphasize the importance of a robust record when a defendant calls upon the Court to determine whether he or she demonstrates suitability to become a child's caregiver.

notes that rehabilitation could only justify a reduction of sentence in combination with other reasons. *See United States v. Reed*, Crim. No. 06-193, 2021 WL 914203, at \*6 (W.D. Pa. Mar. 10, 2021) (citing 28 U.S.C. § 994(t)).  As noted, the Court has not found the other bases cited by Defendant to be extraordinary or compelling reasons for compassionate release.  In any event, while Defendant has admirably completed several courses while at FCI-Hazelton, his efforts in this regard have not risen to the level of extraordinary or compelling.  In large part, Defendant's inability to show extraordinary rehabilitative efforts is caused by the fact that he only began serving his 10-year federal sentence on October 15, 2020.  He therefore has served only a relatively small portion of the sentence imposed by this Court.  In other words, the extent of his rehabilitation largely has yet to be determined.

Defendant asserts that the reason he only just began serving his federal sentence a year and a half ago was because he first served a state sentence that was intended to run concurrently with his sentence in the instant cases.  However, this is simply not supported by the record.  This Court, which sentenced Defendant prior to any conviction or sentence on the relevant state charges, unsurprisingly gave no indication whether the sentence it was imposing should run either concurrently with or consecutive to any future state sentence.  Conversely, there is no ambiguity in regard to Defendant's state sentence for robbery and aggravated assault at Case No. CP-02-CR-9804-2011; it was expressly stated that it was to run consecutive to his federal sentence.  Accordingly, Defendant has served exactly as much time as was intended and still has quite a bit more to serve.  This is neither extraordinary nor compelling.

Moreover, even if the Court were to find extraordinary and compelling reasons for compassionate release, the relatively short time he has spent incarcerated on his federal sentence would weigh against release pursuant to the 18 U.S.C. § Section 3553(a) factors.  *See United*

*States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) (indicating that the length of the defendant's original sentence, and the amount of time served and remaining on that sentence, are relevant in considering the Section 3553(a) factors).  Accordingly, the Court finds a reduced sentence is inappropriate under 18 U.S.C. § 3582(c)(1)(A).  Defendant's Motion and Amended Motion are therefore denied.

s/ Alan N. Bloch
United States District Judge

cc:      Gregory Izear Corbin, No. 33218-068
         FCI Hazleton
         P.O. Box 5000
         Bruceton Mills, WV 26525